UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Charles Schwab & Co., Inc, | No. C 10-4913 JL |
| Plaintiff, | **DISMISSAL WITHOUT LEAVE TO AMEND (Granting Docket # 6)** |
| v. | |
| Bank of America, et al., | |
| Defendants. | |

### I. Introduction

This Court has jurisdiction under 28 U.S.C. §1332(a), 1441(b) and 1446. The matter was filed in San Francisco Superior Court and then properly removed by Defendants on the grounds of diversity jurisdiction. All parties previously consented to this Court's jurisdiction under 28 U.S.C. §636(c). Defendant's motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, came on for hearing. Attorney for Plaintiff was Harold Auerbach, GLASSBERG, POLLAK & ASSOCIATES. Attorney for Defendant was Elizabeth Holt, SEVERSON & WERSON. The Court carefully considered the moving and opposing pleadings and the arguments of counsel and hereby grants the motion.

### II. Factual and Procedural Background

### A. The Facts as Alleged in the Complaint

The facts as set forth in the complaint are summarized in Defendants' motion papers: Doe 1, whose true identity is unknown to Plaintiff, pretending to be one Andrew Collins, a purchaser of a boat from 3A Marine Service, obtained a loan from Bank of America ["the Bank"], which issued him a check for $109,615.00 ["the check"], payable to 3A Marine Service, purportedly as a down payment on that boat. Doe 1 then opened an account with Schwab in the name of 3A Marine Service, endorsed the name of 3A Marine Service on the check, and deposited it in the Schwab account.

Schwab accepted the check for deposit, and allowed trades and wire transfers in the sum of $88,615.00 from the proceeds. About a month thereafter, the Bank notified Schwab that the check had been fraudulently endorsed, and sent Schwab a debit advice charging back to Schwab's account the full $109,615.00 check amount. Schwab thereupon demanded that the Bank reverse that debit and re-fund or re-credit the debit amount citing the "impostor rule" of California Uniform Commercial Code Sec. 3404 ["Sec. 3404"], but the Bank refused to do so. Plaintiff's Complaint sets forth two counts, the first for $88,615.00 damages for failing to honor the check, and the second for damages in the same amount based on the Bank's unjust enrichment at Schwab's expense. The Bank has moved to dismiss both counts under Rule 12(b)(6), Federal Rules of Civil Procedure. As to the first, the Bank asserts that these facts do not constitute a basis for relief under Sec. 3404, and that California law does not authorize a separate cause of action for unjust enrichment.

### III.     Analysis

### A.     Standard under FRCP 12(b)(6)

A Fed.R.Civ.P. 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. As held by the United States Supreme Court:

> "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 ( 2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* This standard for finding

subject matter jurisdiction has been reaffirmed in the case of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009):

> "a] court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)");("[A] well- pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable");("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

*Id.* at 1959 (internal citations omitted)

In considering a motion pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir.1998). The complaint must be read in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

Documents attached to pleadings as exhibits are deemed to be part of the complaint and may be considered by the court in deciding the motion ( FRCP 10 (c)). It is also proper for the court to take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir. V. Little Co. Of Mary Hospital,* 844 F.2d 646, 649 (9th Cir. 1988); *Kourtis v. Cameron*, 419 F.3d 989, 994 n. 2 (9th Cir. 2005) (overruled on other grounds by *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161 (2008).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs,

affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996), rev'd on other grounds sub *nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence *201. In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 ( 9th Cir.1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001 ). For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

**B.  The complaint does not set forth a claim for relief under the California Uniform Commercial Code. UCC Sec. 3404 (a) (1) only applies where the imposter induces the issuer to issue the check by impersonating the payee of the instrument or someone acting for the payee.**

Sec. 3404 (a) (2) applies where either the person whose intent determined to whom the check was payable did not intend the payee to have any interest in the instrument or the payee of that instrument is a fictitious person. At the time the check was issued, the Bank contends that the person who picked up the check impersonated the borrower for whom the Bank intended to issue that check. Schwab's theory is based on a scenario where, even though there is a real company called 3A Marine Service, the 3A Marine Service to whom the check was made payable and for whose benefit the check was deposited in the Schwab account under that name was a fictitious entity created by the impostor for the purpose of converting the proceeds of the check to his own use and benefit.

Schwab argues that the intent of the bank employee who signed the check was to issue that check for the benefit of the real 3A Marine Service, not the fictitious company created by the imposter, to effect *his* intent.

The comments to new Cal. Com.Code § 3404(a), define an impostor as a person "impersonating the payee of the instrument or a person authorized to act for the payee."

Cal. Com.Code § 3404(a) (West Supp.1995). Comment 1 indicates that the new impostor section:

> changes the former law in a case in which the impostor is impersonating an agent. Under former Section 3-405(1)(a), if Impostor impersonated Smith and induced the drawer to draw a check to the order of Smith, Impostor could negotiate the check. If Impostor impersonated Smith, the president of Smith Corporation, and the check was payable to the order of Smith Corporation, the section did not apply.... In revised Article 3, Section 3-404(a) gives Impostor the power to negotiate the check in both cases.

Uniform Commercial Code § 3404 cmt. 1 (1992) (emphasis added).

The comment does not differentiate between the situation in which the Smith Corporation actually exists and one in which it is merely a fictitious principal. Nor does merely impersonating an agent of a real or fictitious entity invoke the impostor rule. "[T]he impostor rule is applicable only when the *issuance of the check* has been accomplished through impersonation of the payee." 27 Cal.App.4th at 804. (Emphasis added) The alleged impostor did not impersonate 3 A Marine when the check was issued to him, therefore the impostor rule does not apply.

Also relevant here is section 3404, subdivision (b)(i). This subdivision, enacted in its present form as part of the 1992 revisions to Article 3 of the Code (Stats.1992, ch. 914, § 6, p. 4366), essentially restates former section 3405, subdivision (1)(b), which in turn was derived from section 9(3) of the Negotiable Instruments Law, codified in California as former Civil Code section 3090, subdivision (3). (See U. Com.Code Com., com. 2, supra, foll. § 3404, p. 416.) In effect, subdivision (b)(i) shields a bank (which in this case would be Schwab) from liability for negotiating an unauthorized or fraudulent check by deeming an indorsement to be effective if (1) the signer of the check did not intend that the named payee would have an interest in the check—that is, the named payee was not the intended payee; and (2) the check was either indorsed in a name substantially similar to that of the named payee, or deposited to an account in a name substantially similar to that of the named payee. ( § 3404, subds.(b)(i), (c).) Neither of those situa6tions exists in this case.

"In applying section 3–404(b), the key issue is whether the person signing as or on behalf of the drawer ... intended that the [named] payee have no interest in the [check].... [¶][T]he section applies where the ... drawer issues an instrument intending that the named payee have no interest in the instrument. Because the drawer ... knows that there will not be a proper indorsement, ... it is unfair to shift the loss to a subsequent purchaser or payer whose fault is minimal." (6 Hawkland and Lawrence, supra, [Rev] § 3–404:5, ¶. 3–482 to 3–483, fns. omitted.) *Unlimited Adjusting Group, Inc. v. Wells Fargo Bank, N.A.* 174 Cal.App.4th 883, 890-891, 94 Cal.Rptr.3d 672, 677 - 678 (2009)

In this case the Bank of America employee intended that 3A Marine, the named payee, would have an interest in the check, and it is immaterial whether "3A Marine" was a real or fictitious entity. Although the check was deposited to an account at Schwab in the name of 3A Marine, the absence of the first prong of the requirement dooms Schwab to take the hit for the fraudulently negotiated check, because it failed to confirm whether the depositor was in truth an agent for 3A Marine, entitled to authorize the wire transfers which Bank of America charged back to Schwab and for which Schwab claims damages.

By way of example, in a typical case in which section 3404, subdivision (b)(i) would apply, an employee of a company makes out a check on the employer's account to a supplier of the employer. The employee intends when he signs the check that it will never be paid to the supplier. Instead, the employee intends to forge an indorsement in the supplier's name and deposit the check to his or her own account, or to another account controlled by the employee or a confederate. In such a case, the employee—the "person whose intent determines to whom an instrument is payable" (§ 3404, subd. (b)(i))—never intended the supplier to have an interest in the check. (See U. Com.Code Com., com. 2, supra, foll. § 3404, p. 417.)

Although the general rule is that the drawer bears the loss in cases governed by section 3404, subdivision (b), that rule is modified by section 3404, subdivision (d).

Section 3404, subdivision (d) states in relevant part, "With respect to an instrument to which subdivision ... (b) applies, if a person paying the instrument or taking it for

value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."

This subdivision applies principles of comparative negligence to permit the drawer to recover from, inter alia, a depositary bank that failed to exercise ordinary care in taking for collection a check subject to subdivision (b)(i). As the Uniform Commercial Code comments explain, "In some cases the person taking the check might have detected the fraud and thus have prevented the loss by the exercise of ordinary care. In such cases, if that person failed to exercise ordinary care, it is reasonable that the person bear the loss to the extent the failure contributed to the loss.... [T]he most likely defendant is the depositary bank that took the check and failed to exercise ordinary care." (U. Com.Code Com., com. 3, supra, foll. § 3404, p. 418.) In this case the depositary bank is actually Schwab, which had the best opportunity to ascertain the bona fides of the depositor, the impostor. Section 3404(d) is the provision which authorized Bank of America to recover from Schwab the fraudulently obtained funds that were subject to the wire transfers. *Unlimited Adjusting Group, Inc. v. Wells Fargo Bank, N.A.* 174 Cal.App.4th 883, 891-893, 94 Cal.Rptr.3d 672, 678 - 679 (2009)

**C. The Complaint does not set forth a claim for relief for unjust enrichment**

It may be true, as Schwab contends, that California decisions treat unjust enrichment as its own separate cause of action, but this is a minority view. See, e.g., *Levine v. Blue Shield of Calif.*, 189 Cal. App. 4th 1117, 1138 (2010) (commenting that "some California courts have suggested the existence of a separate cause of action for unjust enrichment, [but] this court has recently held that [t]here is no cause of action in California for unjust enrichment. Unjust enrichment is synonymous with restitution." (internal citations and quotation marks omitted)).

In other cases, this Court has sided with the majority view. E.g., *G.E. Capital Mortgage v. Maldonado*, No. C99-5405 JL, 2003 WL 23025437, at *6 (Dec. 19, 2003) (listing unjust enrichment among other remedial-type claims such as constructive trust and

monies had and received). Schwab suggests no reason why the Court should reverse its opinions now.

But even if the Court were to adopt the minority view, Schwab's complaint would still fail to state a claim for unjust enrichment. The few courts that do recognize this cause of action generally hold that "[t]he elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

Here, Schwab has not alleged facts supporting the second element, that BofA retention of the check's proceeds is unjust. As shown in the preceding section and BofA's opening memorandum, the Commercial Code allocates the fraud loss from this check to Schwab, the depositary bank. BofA properly charged the item back to Schwab, since the forged indorsement was a breach of Schwab's statutory warranty. See Com. Code, § 4208(a)(1). The chargeback was not "unjust"—indeed it was statutorily authorized. Nor is BofA's retention of the proceeds of the check unjust, since the Commercial Code assigns the loss to Schwab. It is of course the law that when one obtains a benefit which may not be justly retained, unjust enrichment results, and restitution is in order. However, the "mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor."

Although a court of equity may employ broad powers in the application of equitable remedies, it cannot create new rights under the guise of doing equity. Nor will equity lend its aid to accomplish by indirection what the law forbids to be done directly. Equity follows the law and when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies. *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986) (citations omitted).

Here, the law, specifically the Commercial Code, governs Schwab's and BofA's rights. Schwab may not use an equitable claim of unjust enrichment to accomplish by indirection what the Commercial Code does not allow. Consequently, the Court must sustain BofA's motion to dismiss the unjust enrichment claim.

### IV.     Conclusion and Order

Schwab's complaint fails to state a viable cause of action against BofA. Schwab's opposition to BofA's motion to dismiss adds nothing to suggest that there is any basis for this lawsuit to proceed beyond the pleading stage. Nor does Schwab request leave to amend or show how the defects in its claims could be cured by amendment. Consequently, the Court  grants B of A's motion to dismiss with prejudice and without leave to amend. The case management conference for May 11 is vacated. The clerk shall close the file.

IT IS SO ORDERED

DATED: May 9, 2011

_____
James Larson
United States Magistrate Judge

G:\JLALL\CASES\CIVIL\10-4913\DISMISSAL.wpd